NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN T. BUSSICULO,<br><br>Plaintiff,<br><br>v.<br><br>BABCOCK POWER, INC.,<br><br>Defendant. | Civil Action No. 13-cv-07192<br><br><br>OPINION |

JOSE L. LINARES, U.S.D.J.

This matter comes before the Court upon motion by defendant, Babcock Power, Inc., to dismiss Plaintiff's Amended Complaint, (the "Motion to Dismiss"). (ECF No. 23). Pursuant to Rule 78 of the Federal Rules of Civil Procedure, no oral argument was heard. Upon consideration of the Parties' submissions, and for the reasons stated below, Defendant's Motion to Dismiss, (ECF No. 23), is **DENIED**.

I. BACKGROUND[1]

A. Procedural History

Plaintiff, John T. Bussiculo, a New Jersey resident, filed a complaint on November 27, 2013 (the "Complaint"). (Complaint, ECF No. 1, ¶1). On August 7, 2014, Magistrate Judge Joseph A. Dickson granted Plaintiff's Motion to Amend his complaint. (R&R, ECF No. 16). Notably, because Magistrate Judge Dickson found Plaintiff's proposed amendments were not

---

[1] The facts are taken primarily from Plaintiff's Amended Complaint, (ECF No. 17), and are properly accepted as true for purposes of this Opinion.

1

futile, he granted Plaintiff's Motion to Amend and simultaneously denied Defendant's first motion to dismiss as moot. Magistrate Judge Dickson also delineated many of Defendant's arguments in opposition to Plaintiff's motion to amend as *factual* inquiries rather than pleading deficiencies. Specifically, the inquiries of: 1) whether the various personnel employed by the Defendant are fiduciaries; and 2) whether these personnel were negligent in their misrepresentations to Plaintiff. Plaintiff filed the currently operative Amended Complaint soon thereafter. (Am. Compl., ECF No. 17). This Court adopted Magistrate Judge Dickson's Report and Recommendation on September 15, 2014 and denied Defendant's later appeal of Magistrate Judge Dickson's decision to grant Plaintiff's Motion to Amend.

**B. Pertinent Facts**

Plaintiff was a participant in the pension plan of a company named Thermal Engineering Company ("Thermal") that was acquired around 1997 by Defendant, Babcock Power, Inc. ("Babcock"), who assumed the liabilities and obligations under Thermal's pension plan, of which Thermal was the plan administrator. (Id. ¶ 5). Around 2004 Thermal's plan was merged into Babcock's own pension plan, of which Babcock was, and currently is, the plan administrator. (Id.). Plaintiff became a participant in the Babcock plan. Around February 2002 Babcock announced that in August 2002 Babcock would be closing the Union, New Jersey facilities of Boiler Tube of America ("BTA"), which was a division of Thermal where Plaintiff worked since 1973, and that all questions about Thermal's pension plan benefits should be addressed to its human resources personnel in California, where Thermal had its main headquarters. (Id. ¶ 6). At that time Plaintiff was 47 years old and the vice president at BTA. (Id.).

Under a provision of the Thermal Plan known as the "Rule of 85," an employee with 30 years of vesting service could receive retirement benefits upon reaching age 55 without being penalized for retiring before the pension plan's normal retirement date of 65. (Id. ¶ 30). Plaintiff claims he was told by various Thermal human resources staff personnel, one in particular named Leticia Guzman, that he would qualify for the Rule of 85 early retirement benefit (even though his age combined with his years of service at the time of his termination did not equal 85). (Id. ¶¶ 32-35). Ms. Guzman then sent Plaintiff his estimated monthly benefits under the Rule of 85. (Id. ¶ 35). In a September 13, 2004 email to Plaintiff, Ms. Guzman stated, "I have received word from our actuaries (Hewitt), they confirmed with their legal consultant that you are entitled to the rule of 85." (Id. ¶ 39).

In February 2009, just before Plaintiff turned 55, he reached out to Ms. Guzman to confirm that he would qualify for the Rule of 85, and that after contacting Susan Chappell, the third party administrator for the Babcock Plan and "based on a prior response from Hewitt" (the actuaries for the Babcock Plan), Ms. Guzman confirmed that he qualified for the Rule of 85 and would receive an estimated monthly benefit amount of $3,706.36. (Id. ¶¶ 40-44). Plaintiff alleges that based on these representations, he elected to begin receiving benefits at age 55, rather than waiting until he turned 65 to seek retirement benefits. (Id. ¶¶ 46-47). Plaintiff claims that as a result of this decision, he is now receiving actuarially reduced monthly payments rather than the higher monthly payment he would have received if he had waited until age 65 to begin receiving benefits. (Id. ¶¶ 62-63). Thus, Plaintiff asserts claims for breach of fiduciary duty and equitable estoppel under ERISA section 502(a)(3).

### C. Defendant's Present Motion to Dismiss

Defendant's Motion to Dismiss is premised on the notion that Plaintiff has failed to plead the required elements for his claims of equitable estoppel and breach of fiduciary duty under ERISA even after he was granted leave to file an Amended Complaint. (Def. Br., ECF No. 23-1 at 1). In other words, Defendant opines that Plaintiff has failed to cure the deficiencies of his initial complaint. More specifically, Defendant opines that Plaintiff has not alleged sufficient facts to demonstrate that: 1) the individuals (upon whom he relied) where fiduciaries of the pension plan at issue; and 2) nothing more than a mere mistake was made by those individuals upon whom Plaintiff relied. (Id.). Defendant also claims that Plaintiff seeks equitable relief under ERISA by way of a "windfall benefit" which is not included in the plain language of ERISA. (Def. Br., ECF No. 23 at 13).

## II. LEGAL STANDARD

For a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 62, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In determining the sufficiency of a complaint, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). Additionally, in evaluating a plaintiff's claims, generally "a court looks only to the facts alleged in the complaint and its attachments without reference to other parts of the record." *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

## III. DISCUSSION

As a preliminary matter, the Court notes that Defendant's current Motion to Dismiss is substantially similar to the motion to dismiss that was denied as moot by Magistrate Judge Joseph A. Dickson. (See Motion, ECF No. 7 and R&R, ECF No. 16). This is of course because leave to amend a pleading may be denied where the court finds futility of amendment. *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000). A proposed amendment may be denied based on futility if it "would fail to state a claim upon which relief could be granted." *Shane v. Fauver*, 213 F.3d at 115. Thus, "[i]n assessing 'futility' the District Court applies the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Id.* To survive dismissal under Rule 12(b)(6), a complaint "must contain sufficient factual matter accepted as true to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

ERISA sets out certain obligations for fiduciaries. Under ERISA § 502(a)(3)(B), a plan participant may have a cause of action for a breach of fiduciary duty. 29 U.S.C. § 1132(a)(3)(B). To allege and prove a breach of fiduciary duty for misrepresentations, a plaintiff must establish each of the following elements: (1) the defendant's status as an ERISA fiduciary acting as a fiduciary; (2) a misrepresentation on the part of the defendant; (3) the materiality of that misrepresentation; and (4) detrimental reliance by the plaintiff on the misrepresentation. *Daniels v. Thomas & Betts Corp.*, 263 F.3d 66, 73 (3d Cir.2001). Defendant alleges that Plaintiff failed to properly plead each of these elements. Specifically, Defendant argues that Plaintiff has not established representations were made by a "fiduciary," as properly defined under ERISA. Additionally, Defendant states that Plaintiff has failed to allege that the misrepresentation was anything more than a mere mistake. Finally, regarding the last element depicted in *Daniels v. Thomas & Betts Corp.*, Defendant claims that Plaintiff's allegations of detrimental reliance are

5

insufficient because he has suffered no legally cognizable harm. 263 F.3d 66, 73 (3d Cir.2001). The Court evaluates dismissal pursuant to Fed. R. Civ. P. 12(b)(6) with this framework in mind, and finds that Plaintiff has sufficiently plead his relevant claims.

### A. Plaintiff Sufficiently Pleads the Defendant's Status as an ERISA Fiduciary

Defendant argues that Plaintiff has failed to plead enough facts to render members of the human resources department "fiduciaries" and thus, his Amended Complaint should be dismissed. More pointedly, Defendant asserts that Plaintiff's claim for breach of fiduciary duty is devoid of factual allegations showing the human resources personnel he spoke with regarding his benefits, exercised any discretion as to any provisions in the Plan. (Def. Br., ECF No. 23-1 at 9). Contrary to Defendant's argument, Plaintiff states in his Amended Complaint that plan administrators:

> "delegated to their human resources departments the function of answering pension plan questions from plan participants, and to making material representations to plan participants about the plan terms and benefits ... *those human resources departments had actual authority to act on behalf of the plan administrators* ... and had a fiduciary duty to provide plan participants with complete and accurate information so that plan participants could make adequately informed decisions about their pension plan benefits." (emphasis added) (Am. Compl., ECF No. 17, ¶ 59).

For an individual to qualify as an ERISA fiduciary, he or she must have actual or apparent authority to advise the company's employees of their rights under the plan at issue. *Taylor v. Peoples Natural Gas Co.*, 49 F.3d 982, 988-89 (3d Cir.1995). As previously stated by Magistrate Judge Dickson, Plaintiff sufficiently *pleads* that the human resources personnel are "fiduciaries" particularly in light of the facts which explain how various human resources personnel of the

Defendant were delegated actual authority by the plan administrator, to advise employees about their plan benefits.[2] (emphasis added).

Moreover, "ERISA ... defines 'fiduciary' not in terms of formal trusteeship, but in *functional* terms of control and authority over the plan." *Mertens v. Hewitt Associates,* 508 U.S. 248, 262, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993)(emphasis in original). "Fiduciary duties 'attach not just to particular persons, but to particular persons performing particular functions.' " *Hozier v. Midwest Fasteners, Inc.,* 908 F.2d 1155, 1158 (3d Cir.1990). "[U]nder ERISA, a person 'is a fiduciary with respect to a plan' only 'to the extent' that 'he has any discretionary authority or discretionary responsibility in the administration of such plan.' " *Varity Corp.,* 516 U.S. at 527, 116 S.Ct. 1065 (quoting 29 U.S.C. § 1002(21)(A)(iii)); *see also Confer v. Custom Eng'g Co.,* 952 F.2d 34, 36 (3d Cir.1991) ("In determining who is a fiduciary under ERISA, courts consider whether a party has exercised discretionary authority or control over a plan's management, assets, or administration."). The question of whether the human resources personnel named in the Amended Complaint qualify as fiduciaries by way of their function, is indeed a question of fact. The *pleadings* sufficiently articulate that various personnel of Defendant were fiduciaries in a functional capacity stating the following:

> 11. In 2004 in connection with his financial planning, Bussiculo again asked the human resources department in California to confirm that he could grow into the Rule of 85, and the same staff person to whom he had previously spoken to in 2002 again represented that he could, and said that his estimated monthly benefit would be $3706.36" (Am. Compl., ECF No. 17).

---

[2] *See In re Unisys Corp. Retiree Med. Benefits Erisa Litig.,* MDL 969, 2007 WL 2071876 (E.D. Pa. July 16, 2007) *aff'd, In re Unisys Corp. Retiree Med. Benefits ERISA Litig.,* 579 F.3d 220 (3d Cir. 2009) "The Magistrate Judge found that, despite Trial Plaintiffs' inability to identify the speakers, other evidence led to the conclusion that authorized members of Unisys's human resource staff did counsel Trial Plaintiffs about retiree medical benefits... [thus]...it was reasonable for certain Trial Plaintiffs to believe that their supervisors were acting on the company's behalf and within the scope of their authority as agents of the company when advising them about the cost and duration of their retiree medical benefits. In light of these findings, the Magistrate Judge did not err in concluding that certain of the Trial Plaintiffs' supervisors had apparent authority to advise them regarding their retirement benefits."

13. In response the same person to whom Bussiculo had previously spoken represented that pension plan benefits questions were now being handled by Babcock's human resources staff in Worcester, Massachusetts, but assured Bussiculo that there was nothing to worry about because there were about 19 people in the same position as him who were currently collecting benefits under the Rule of 85. (Id.).

14. After speaking to Bussiculo, that human resources staff person from California communicated with both the plan's actuary as well as Babcock's human resources department in Worcester, Massachusetts to confirm Bussiculo's eligibility under the Rule of 85 and the estimated monthly benefit amount of $3706.36 that she had previously calculated for him in 2004. (Id.).

15. In July 2009, after he had already turned 55, Bussiculo had a telephone call with a human resources department staff member from Worcester, Massachusetts representing to him that he qualified for the Rule of 85 and that his estimated monthly benefit amount of $3706.36 was still the same. (Id.).

Defendant submits the very same arguments it presented to Magistrate Judge Dickson in opposition to Plaintiff's Motion to Amend. As previously stated, the same futility standard that applies to amending the complaint is used in deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6). Plaintiff essentially asks this Court, for the second time, to overturn Magistrate Judge Dickson's findings. For the second time, this Court is not inclined to do so.

**B. Plaintiff Sufficiently Pleads Detrimental Reliance**

Defendant argues that Plaintiff failed to demonstrate in the pleadings how his actuarially reduced benefit has resulted in any harm to him, and thus, the detrimental reliance element, as required by ERISA, is not met. Plaintiff's Amended Complaint alleges that Plaintiff relied to his detriment on misrepresentations by choosing to take retirement benefits at age 55 and "but for the repeated misrepresentations ... over a seven year period, [Plaintiff] would have waited until age 65 to apply for retirement benefits," and as a direct result of the foregoing breach of fiduciary duty,

8

Plaintiff has suffered damages. (Am. Compl., ECF No. 17, ¶¶ 63-65). While Defendant states that Plaintiff is not receiving less money due to the alleged breach of fiduciary duty, the Court finds that Plaintiff's early retirement, under these facts, is detrimental to his benefits.[3] For example, Plaintiff states he would have received almost $20,000 more per year if he had waited to retire until the age of 65 and had not relied on erroneous statements and information by Defendant. (Pl. Opp., ECF No 24 at 12). Plaintiff has therefore sufficiently plead detrimental reliance on the misrepresentation by Defendant.

### C. Plaintiff Alleges More than a "Mere Mistake" in his Amended Complaint

Defendant argues that Plaintiff fails to allege more than a "mere mistake" by a fiduciary and therefore, the fiduciaries in this case cannot be liable for his loss. Defendant cites to *Leckey v. Stefano* which articulates that a mere mistake will not suffice, "only fault in the form of bad faith or negligence" will establish fault. 501 F.3d 212, 224 (3d Cir. 2007). However, then Defendant cites directly to the Amended Complaint where Plaintiff alleges negligence. (Def. Br., ECF No. 23-1 at 12). Indeed, Plaintiff's Amended Complaint states that from 2002 through 2009, persons in the human resources departments "repeatedly, and knowingly or negligently, made numerous affirmative verbal and written misrepresentations to [Plaintiff] that he could 'grow into' the Rule of 85 by simply turning 55 without having to be employed by a Babcock related company." (Am. Compl., ECF No. 17, ¶ 61). Plaintiff also maintains that these persons failed to give him complete and accurate information which "prevented him from making an adequately informed decision as

---

[3] Defendant also claims that because the only remedies available under ERISA section 503(a)(3) are equitable in nature, Plaintiff is not entitled to greater benefits than he is legitimately entitled to, but nonetheless seeks this improper relief nonetheless. (Def. Br., ECF No. 23 at 13). Defendant further states that Plaintiff is improperly seeking a "windfall" but fails to explain this notion further. Plaintiff however argues that but for the misrepresentations of Defendant, he would have retired later and would be (in Defendant's words) "legitimately entitled" to more benefits. The Court agrees with Plaintiff in this regard and will not dismiss the relevant claim.

9

to whether to seek retirement benefits upon turning 55 instead of waiting until the normal retirement age of 65." (Id. ¶ 61-62). Further, Plaintiff states "during the years 2002 through 2009 there were repeated material misrepresentations to [Plaintiff] about his eligibility to grow into the Rule of 85 and receive a certain amount of monthly pension benefits if he applied for retirement benefits at age 55." (Id. ¶ 67). These facts suffice to state a plausible claim for negligent misrepresentations.

Plaintiff opposes Defendant's argument that Plaintiff, on these facts, should even have to plead negligence at all. However, because the Court finds that negligence is properly plead, this matter is moot. The Court reminds Defendant of the distinction between challenging the merits of Plaintiff's claims and challenging Plaintiff's plead allegations, which the Court accepts as true for this Motion to Dismiss. Plaintiff has sufficiently plead a misrepresentation by a fiduciary who acted negligently and the Court will not go further to make any finding of facts at the pleading stage of this litigation.

**D. Equitable Estoppel**

Plaintiff also adequately pleads a claim for equitable estoppel as he states a claim for "extraordinary circumstances." (citation omitted). The Third Circuit has held that to state a cause of action for equitable estoppel under ERISA § 502(a)(3), an "ERISA plaintiff must establish (1) a material representation, (2) reasonable and detrimental reliance upon the representation, and (3) extraordinary circumstances." *Curcio v. John Hancock Mut. Life Ins. Co.,* 33 F.3d 226, 235 (3d Cir.1994). Thus, for purposes of equitable estoppel, this Court is only left to consider whether Plaintiff's Amended Complaint sufficiently pleads "extraordinary circumstances," and finds that he has. *Id.*

While "extraordinary circumstances" generally involve acts of bad faith on the part of the employer, attempts to actively conceal a significant change in the plan, or commission of fraud,[4] a network of misrepresentations over a period of time, will suffice under these facts. Plaintiff's pleading of "extraordinary circumstances" here, is similar to that in *Smith v. Hartford Ins. Grp.*, as explained by Magistrate Judge Dickson. 6 F.3d 131 (3d Cir. 1993). In *Smith,* the Court concluded on remand that "a factfinder could find ... [that extraordinary] circumstances are established, in light of the [employer's] repeated oral and written misrepresentations to [the husband], his diligence in attempting to obtain accurate answers regarding his wife's coverage, as evidenced by his persistent questioning of [human resources and insurance company] personnel, and the immense coverage expenses at stake." *Id.* at 142. Like the *Smith* plaintiffs, Plaintiff here pleads that he engaged in persistent questioning about significant benefits at stake if he were to retire at age 55, over the course of seven years. Thus, the *repeated* affirmative misrepresentations, combined with Plaintiff's *many inquiries* about his benefits, demonstrate that extraordinary circumstances have been plead and Plaintiff has properly stated a claim for equitable estoppel.

## IV. CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss, (ECF No. 23), is **DENIED**. An appropriate order accompanies this Opinion.

_____
JOSE L. LINARES, U.S.D.J.

December 8, 2014

---

[4] *See Jordan v. Federal Express Corp.*, 116 F.3d 1005, 1011 (3d Cir.1997).

11